Hear ye, hear ye, hear ye, this Honorable Appellate Court of the 2nd District is open pursuant to adjournment. The Honorable Donald C. Hudson presiding over the hearing. Please be seated. Your Honor, it's the first case of the morning call, 213-304, Albert R. Davis, M&D v. Kewanee Hospital. On behalf of the lawyer, Mr. Adam Angiorelli, on behalf of the appellee, Mr. John Sonic. Thank you, morning counsel. Mr. Tamberelli, on behalf of the appellant, you may proceed. Good morning counsel, and may it please the court. My name is Adam Tamberelli, and I represent the appellant, Dr. Albert R. Davis in this case. This case comes before the court for de novo review of a decision of the circuit court dismissing the appellant's complaint pursuant to section 2619 of the Illinois Code of Civil Procedure. The dispute in this case is one of statutory interpretation and involves a question of first impression in this state. Section 517 slash 15H of the Healthcare Professional Credentials Data Collection Act, which I'll refer to as the collection. Mr. Tamberelli, you say in your briefs that you have no remedy. Unless this court were to reverse the trial court, you'd have no remedy, your client would have no remedy, correct? That's correct. But couldn't you have filed a complaint with the Department of Public Health under the Administrative Review Act, which is applicable to this provision by a subsection, I believe it's 965-210. But, and alleged that the hospital violated the act by denying your client access to the records. And if you lost before the department, then you could have sought judicial review, correct? Well, your honor. Does the Administrative Review Act apply to the Credentials Act? The Administrative Review Act does apply to the Credentials Act. The issue in this case is that Dr. Davis did not become aware of the allegedly defamatory information for a couple years after this took place. He- Would that have precluded him from filing a complaint with the department? Well, I'm not sure, and to your point, Judge, the department would have undergone an investigation, perhaps. But Dr. Davis had no concrete proof that any of this existed. But that's the purpose of having the departments investigate it, so they could investigate the claim and determine whether or not there was a violation. Well, even if he would have availed himself of that opportunity, I'm not sure that the department would have required the hospital to turn over the documents and allow him to challenge his credentialing process. My point is, I caught this issue as I was reading through the act, so perhaps we should have asked you to brief it, but doesn't he have to exhaust that remedy before he can seek judicial review, if the Administrative Review Act applies? I don't believe so, Judge. In this case, and unfortunately, we did not have a chance to brief that issue. But in this case, he would be challenging the hospital's bylaws and the hospital's procedure. This was in a departmental proceeding whereby he'd be seeking records in some sort of departmental proceeding, which would be subject to administrative review and exhaustion of remedies, an argument for dismissal in this case. But to your point, Judge, and I think what that argument goes to is to the whether he has a private right of action, if I'm not mistaken. Yes. And I'd like to start out, we've set forth a lot of the analysis in our briefs, but separate from that, I'd like to acknowledge two of the four counts, one under each statute, are for declaratory judgment in this case. And this court has been very clear that a declaratory judgment is an appropriate means to resolve controversy related to statutory destruction or interpretation, which this is. The declaratory judgment act itself, the plain language of it, states that no action or proceeding is open to objection on the ground that merely a declaratory judgment or order is sought thereby. The court may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed. So, I believe that the fact that we are seeking declaratory relief of Dr. Davis's rights under the statute, in and of itself, satisfies the burden of providing that this is a case that can be heard by the court. Counsel, let me ask you a couple of special questions. Sure. Obviously, you're seeking to fall within the exceptions to the confidentiality of privileges in the medical act and that's correct? That's correct, Judge. Would you agree that under the confidential exception in the medical studies act, it's not triggered unless following a credentialing process, a decision is actually made on staff privileges, correct? Absolutely, Judge. So, what evidence other than the affidavit from the hospital can you point us to that would suggest a decision was made? Well, I guess there's two facets to that question. First, as this was a dismissal on the pleadings and it was pled that a decision was made, then the court must accept that as true. I understand there was an affidavit which contradicted that allegation, which is why the second half of our appellant's brief is addressed to our request for a deposition or discovery under Supreme Court Rule 191B because all that the defendant proffered in this case to demonstrate or to allege that there was no decision is a self-serving affidavit. Did you ask for a leave to conduct discovery at the trial court level? Indeed, and it was denied. What we were presented with was an affidavit. The affidavit said, well, they never denied that the credentialing process was underway. There was an offer of employment. There were forms sold out for two months, e-mails. The credentialing process was underway, and I don't think that is in dispute in this case. What the affidavit said is there was no decision made. Well, we have no way. We were not granted any leave to challenge that. So you're saying as a practical matter, how does one ever get behind this? The hospital throws out an affidavit, and that's the end of the ballgame. Judge, that's a large part of our brief, our public policy argument in this case. Our appellant's brief isn't stating that as a matter of law that the MSA applies if there was no decision here. We're saying the evidence doesn't support it other than the affidavit. The evidence in the record isn't complete. You're saying common sense defies the affidavit that there had to have been a decision. Indeed. And to support that, through this took place in late 08, and now it's 2014, there's been no explanation at any level in litigation, outside of litigation, during the process as to the basis of Dr. Davis' withdrawal of employment. Which raises another question. The argument of the defendant is that you're seeking this information only to sue other parties. Indeed, they did point to that repeatedly. However, I'll also point you to the complaint, which is our appendix A-9 in the record of C-10, in paragraph 26, in which we allege that Dr. Davis brings this complaint for declaratory and injunctive relief to challenge the integrity, fairness, and result of Kiwani's credentialing process and decision to withdraw its offer of employment. Though that challenge is what the exceptions in the two statutes refer to, and the fact that we may also be seeking possibly some other action. What other action could there possibly be? Hasn't the statute pretty much run on everything? Well, I guess if the discovery rule were to apply here. And this is purely hypothetical, because what if we got the information? We're not saying it's definitely in there. Well, speaking to the issue of remedy of what you could have done, why not a 224 pre-suit petition to depose parties that were part of the process? Well, I guess. To discover the identity of the person who dimed out the client. Well, I guess that, I mean, I'm not sure how much more effective that would be. We'd still run into the same problem with confidentiality. Right. There would have been the same thing, and by way of the lawsuit, we started a declaration of Dr. Davis' rights to this information based on the exceptions. What's your understanding of the purpose, the legislative purpose behind the medical study? Well, I know. What was it designed to protect? I understand that there is a plethora of case laws stating that it is designed to protect the public, and we fully acknowledge that. However, I'll mention that in every case cited in the briefs and every case that has interpreted it, these cases have found they've been interpreting the confidentiality portion of the statutes, and it's only the Medical Studies Act, not the exception to the confidentiality. Now, the exception itself, by its own language, indicates that it is designed to protect the physicians who want to challenge this credentialing process. The privilege and confidentiality provisions themselves certainly are designed to protect the, you know, full disclosure so that there's impartial review without fear of reprisal. However, once you get to the exceptions under the statutes, those exceptions were clearly enacted to protect physicians so they could challenge in unfair credentialing processes and decisions. Discharge or unlawful hiring practices, discriminatory actions taken against a person while they're employed, isn't that the type of actions that really contemplates? You know, there's no real case law that I'm aware of that delineates exactly what it contemplates. I think by its very nature, it contemplates that if there is some unfairness or some wrongdoing, whatever it may be, without limitation other than the statutory language, then there'd be a basis of obtaining this information for a physician who's been wronged. Why is the Tunka case, tell us, not controlling in this case? Well, the Tunka case, it's not controlling. In the Tunka case, the physician was suing for damages, first of all, which Dr. Davis is not seeking damages in this case. Right now, he's not. Correct. You did leave open that possibility. Correct. But under the causes of actions that were pled and dismissed, you're right, Judge. The physician is suing for damages due to an alleged unlawful disclosure. He was not seeking a disclosure of information under the exception under the MSA or the Credentials Act. In that case, there was information allegedly disclosed that shouldn't have been disclosed. So that's contrary to the case at bar where we're saying we want this information. We don't want it kept confidential. And that's a distinguishing factor. Didn't Tunka hold, though, that under the Medical Studies Act, it was not enacted to protect the public. They rejected the physician's argument that he was a part of a class that it was enacted to protect. Didn't they hold that? They did. They did. And to respond to that, I will just say they were not interpreting the exception to those statutes. And this was only under the MSA, again. This was not the Credentials Act. So you're saying it's dicta? What are you saying? Well, I'm saying actually it is dicta because first Tunka held, I believe, that the information was not subject to the MSA. And then it went on to analyze the private right of action language. So when the court came to the conclusion that this didn't fall under the MSA in the first instance, anything after that really is dicta. Well, to cut to the chase, can you tell us succinctly how this situation falls into the exceptions in the act? How does Dr. Davis fall within the exceptions to get past this wall that you're saying blacks in from proceeding out of the case? Well, he is these under the I'll start with the Credentials Act because we don't know if a decision has been made, so the Medical Studies Act may or may not be applicable. We didn't get the chance to conduct discovery on that issue. But under the Credentials Act, it states that the exception states that in any hospital proceeding to decide upon the physician's staff privileges or any judicial review of either, the claim of confidentiality shall not be invoked to deny such physician access to use of data upon which the decision was based. But there's been a decision made. Again, we're hung up on the word decision over here. I apologize. That was the Medical Studies Act. Forgive me. And I'll cite the Credentials Act now. Except that in any proceeding to challenge credentialing or recredentialing or in any judicial review, the claim of confidentiality shall not be invoked to deny a healthcare professional, healthcare entity, healthcare plan, or hospital access to or use of credentials data. The proceeding is to – this is a proceeding as we set forth in the brief, and it is a court proceeding, and we are challenging the process, the credentialing process. We are seeking information to challenge it. This brings back the point I made earlier. The passage you just read is a direct reference to the Administrative Review Act, judicial review of an administrative decision. That's what that is a reference to, isn't it? Judge, that may be, but it says or in any judicial review. It says in any proceeding or judicial review. That's the – the proceeding is the administrative proceeding or the judicial review of that decision. That's a – I see that as a major roadblock to your cause. Well, the statute itself does not define proceeding as an administrative review proceeding. The statute says the Administrative Review Act applies, though. The statute, it does say that. But it doesn't say a proceeding for administrative review. It says a proceeding to challenge the credentialing or re-credentialing process. I have one more question. Sure. Why would the hospital require your client to sign a release from liability if he was never going to have access to the credentialing records anyway? I think that would be better directed towards counsel. But that bolsters your position, doesn't it? It does. I think it certainly does. And I think the unanswered questions bolster our argument as well as to why we – to this day, Dr. Davis has never been informed the basis of his denial. You know, they say, well, there was no final decision made and, oh, it wasn't because of anything. But we were never told, oh, here's why, you know, the hospital ran out of funding, anything. They just kind of swept it under the rug and said – proffered the affidavit and said, you know what, there was no decision made, case closed, ipso facto, it's confidential and privileged. But a lot of people apply for jobs and don't get an explanation why they do or, in this case, don't get a job, right? I mean, that's not unusual. Well, I don't – I agree with you, Judge, but I don't think most jobs – first of all, he was offered employment before all of this, a credentialing. Contingent. Yeah, contingent employment. But I don't think most job application processes are as regulated as the physician hiring and credentialing process. So you're saying this credentialing is essentially – you're looking at it as more the process than the decision, correct? It is defined in the Credentials Act as the process. It's specifically defined as the process of assessing and validating the qualifications of a health care professional. And that's in subsection 5 of the Credentials Act. Thank you. Your time has expired on the opening argument. You will have an opportunity to address the Court again in the final. Thank you very much. Thank you very much. Mr. Simon. May it please the Court, my name is John Simon. I represent the defendant, Eppley, Kewanee Hospital. It's important to understand what this case is. This is not an action to review an adverse medical staff privileges decision by Kewanee Hospital. The employment offer was withdrawn. There's nothing in the record to say the basis for it. That's a problem for Dr. Davis, but that's not what the lawsuit is about. The lawsuit is about the fact that he brought an action under these two acts, the Medical Studies Act and the Credentials Act. And he said that those acts give him a right to get the credential files that's maintained by Kewanee Hospital and to get an injunction from the Court to order the Court to give it to him. And our position is that those two acts do not give him that right. They do not create a private right for a physician to enforce them. Now, there are exceptions, correct? I mean, obviously, the act provides for the exceptions. If the credentialing decision is made, then he would have a right to go behind the confidentiality. Is that correct? My contention is not in a private right of action. That would be in the proceeding to decide his credentialing. He can appeal it. The hospitals have what they call the fairness hearings and the review of the denial. They have a hospital proceeding, and there is, under Illinois law, under the Adkins decision, there's a right to bring a court challenge to the hospital decision denying credentialing on fundamental fairness. Every decision is made, but does he even get to square one in this case on the basis of the affidavit and the hospital's position? The hospital's position, as I understand it, no decision was ever actually reached. That's correct. And he was advised that in 2009, actually, the record in the case, I would make the contention that he alleges in the complaint that he was denied the access to his credential file, which he asked for in February of 2012. And Quine Hospital sent him a letter dated March 16, 2012, and said that you can't have it because, as we told you in 2009, there was no credentialing decision ever made in your case. Your employment offer was withdrawn before the credentialing, the review of the credential's materials commenced. He alleges that. He's arguing that it's like a catch-22. How does somebody really know that? He can't get to that issue. The hospital says no decision was made, even if it's years later, and your position would be, well, then that's the end of the issue. You accept the hospital's word, and that's it. How would you ever get to any exceptions? Well, he did accept the hospital's word because he never asked for a hearing when the employment offer was withdrawn and never challenged that letter, which he got in 2009. Now, all he's doing at this time, he's not challenging. He's not saying, I want my job. I want to be credentialed. He's not challenging. He wants to know who dialed him up. Pardon me? He wants to know who dialed him up. Exactly. That's what he wants. He feels that somebody has evaluated him in a negative light. He wants to identify that person as human, and he's alleged in this complaint. Hypothetically, let's say I've triggered her name, Schwindliner. Yes. The other lady. Schwindling. Schwindling. Received some information that he maybe left a sponge in some patient in case he's settled on the court. Under your theory, he could never find that out because it occurred during the credentialing process, correct? He can't find it out from Kewaunee Hospital. I don't know what other evidence. Could he have filed a 224 petition to depose those witnesses? With the confidentiality, it would preclude them from talking, right? I believe that's correct. That's what the Medical Studies Act says. That's what it's intended to do. It's intended to encourage physicians to make candid evaluations of their peers. And those evaluations, those candid evaluations, it's intended to include negative evaluations so that that's included in the staffing decisions that are made by the hospital. So that's why it's protected. It's to encourage the physicians to do it. So, you know, he's saying I think somebody gave a candid assessment that I want to challenge. And the act is designed to prevent that. That's why Kewaunee Hospital won't give it to him. Not because he's going to sue Kewaunee Hospital, but because the act says we can't give it to him. What's the purpose, then, of if the information can't be provided to him under any of those circumstances that we just discussed, then what was the purpose of the release of liability? And that's explicit provision for information provided during the credentialing process. Is that just a double-seeker protection from the hospital's point of view? You know, I suppose the release of liability, I don't have it in front of me to look at it. I know that in this court's average decision, that release actually became an issue because the evaluator insisted on a more robust release and the doctor wouldn't give it. And then the hospital determined that if he wouldn't give it, the credentials file would be incomplete, and they didn't process it. And that was the basis for that decision to say you need a credentialing decision to then have the release of the credentialing file. So I know that release came up in that context, and I know that the standard release is not all-inclusive because he wanted more in that case. I don't really know. I mean, it is true that it's – I would say I don't – I mean, lawyers often do belt and suspenders. I don't know that that's the reason, but it may well be. Did you oppose the discovery deposition of Ms. Schwinnwein at trial court level? Yes. Why was that? The reason – Dr. Davis's affidavit is in the complaint. It's very clear that he wants to go for the very information that the act is intended to protect. He feels that she knows who it is that – Sandbagged him, so to speak. Pardon me? Sandbagged him, so to speak. Yes. Let me go back to your question or your statement that Dr. Davis accepted the hospital action by not appealing the hospital decision back in 2009. Right. From your perspective, then, the procedure would have been for him to appeal that to the – is that to the Board of Trustees or to the Medical Executive Committee or to whom? Well, first of all, I want to say that that's neither the Medical Studies Act nor the Credentialing Act. We're just talking about he was – he had an application for employment or a contingent employment offer and an application for a credentialing medical staff privileges, and they withdrew the employment and they closed his staff privileges application. If he wanted to say, don't stop my medical staff privileges application, I want it anyway because I'm going to challenge your employment, withdraw your employment, proceed with it, then that would have been an issue and he could – it may have resulted in a lawsuit there because he was challenging the action in 2009, and that could have been an action because that involved what he says was an unfair employment action or a – and he would have been seeking his employment. That's not what this lawsuit is at all, but that would have been the way in which that would have come out in the context where he might proceed with a challenge to a negative staff decision. Thank you. Judge – Justice Burkett, we did argue that the administrative review law is the exclusive remedy for a violation of the Credentials Act. We did argue that's why there's no private right of action because the department – What pleading was that that you – In our brief. In your – okay. And then we said that there's no – we said that there's no private right of action, they're both, and we cited the Tuncker case for the medical – but then we went on for the Credentials Act, and actually the department has implemented – first of all, the statute charges the Department of Public Health with the implementation and enforcement of the act, and the department has promulgated its rules and called for the filing of written complaints, that they will issue notices of violation, that they will conduct hearings to adjudicate violations of the Credentials Collection Act and impose penalties, and it even says the amount – the penalties, not more than 1,000 for the first violation, 5,000 for subsequent violations, and it says that the administrative review law shall apply to review those decisions, and as this court understands, where the administrative review law is expressly incorporated into an act, it is the exclusive avenue for judicial review. So there's no right to bring a collections act claim in the first instance in the trial court. So for that, that's the reason that we asked this court to affirm the dismissal of Judge Wheaton's – with prejudice – decision in this case. You know, we go on and make the point that if you actually – you know, the Evers decision points out, and actually, let me step back. The reason for the exception, as stated by our own Supreme Court in Jenkins v. Wu, was to protect the physician in a hospital proceeding to decide the staff privileges. That's what it says, and that's why when this court had the Evers, they looked at was there a decision on the staff privileges, because that's the reason for the exception. And so this case, Dr. Davis is not addressing the issue of his staff privileges or the net of staff privileges. He's saying I have a broad-based right to my credentials file when I want it for whatever reason I want it for, and that's just not what that provision in the Mental Studies Act provides. So Justice – I mean, Judge Wheaton was correct to say that there was no decision in this case, credentialing decision, and therefore, the exception doesn't apply. And then she was correct to say that the Credentials Act, which says that the credentials data shall be maintained confidential as provided by law, that she's to read the ruling of the Medical Studies Act in powering materia with the Credentials Act. And this is – and so her decision to read it in powering materia was correct and should be affirmed for that basis. For these reasons, we ask that the Court affirm the decision of the trial court in the dismissal with prejudice of this case. Thank you very much, Mr. Simon.  Mr. Timberley, you may address the Court in your final argument. Thank you, and if I could just raise a few brief points in rebuttal. First, I want to call attention to the circuit court's ruling, which held that the fact that the affidavit stated there was no decision made on Dr. Davis' credentialing process, that automatically precluded the Credentials Act as well as the MSA, even though the Credentials Act doesn't require that a decision be made. And I'd also like to point out that in all the cases that we've been discussing interpreting the MSA mostly or the Credentials Act and confidentiality and privilege in general, in almost every single one of them, these decisions were made after there was an extensive record and discovery was taken in the case, whether it had been on summary judgment or as part of an evidentiary ruling. I think the one exception that comes to mind is the Evers case, but that case is different based on the fact that the plaintiff in that case was – the Court held that based on the pleading itself, the physician's application was incomplete, and therefore the decision was never made in that case. You could tell from the pleadings itself. Here in this case, that's not true. We pled that the decision was made. There's no allegations that Dr. Davis' application was incomplete, but we were still not going to leave to conduct any discovery to challenge any appearance in the affidavit as to whether a decision was made. How do you respond to counsel's argument that this is not about Dr. Davis challenging the hospital's decision not to hire him, this is simply about trying to get information about who is potentially providing adverse information about him? Well, in 09, this decision was made, and Dr. Davis did not find out until much later from a third party that there may have been some misconduct or defamatory information given to the Board, which is why there was a delay. When the decision was made, Dr. Davis assumed that everything was on the up and up and that he, you know, there was a valid reason for the denial or withdrawal of his offer of employment. It was only later that he found out about this possible misconduct. So by way of this act, it is simply, the whole point of this lawsuit is simply to discover whether what he heard and whether there was defamatory information was communicated to the Credentialing Committee. And if there was, he will challenge it, and if not, he obviously will not. And he couldn't challenge it at the time because he was not aware that there may have been some funny dealings going on. And that's why he didn't go through the hospital's procedures for challenging credentialing. So now it comes up, it would be too late under the bylaws now to challenge the credentialing as far as any direct appeal. So what he's seeking is any information that he has later discovered. So he can pursue any remedy, whether it be under the bylaws or any other court action, or, you know, reapply even. And then reapply for credentialing with the hospital and explain what happened before. I mean, that's, the Credentials Act allows a physician to challenge the integrity of the credentialing process. That's essentially, at bottom, that's what these exceptions are for. And that is what Dr. Davis is seeking to do in this case. By taking the position that he has a private action here that has seemingly never been recognized in any other cases, you're, in effect, asking for an expansion of the coverage of these acts, so to speak, aren't you? Well, I like to think of it as a narrowing of a privilege. The flip side. Exactly. Okay. It sounds more palatable. It does. To me, it does, certainly. As your honors are aware, the privileges must be construed as narrowly as possible under Illinois law. And when there's an exception in the statute that gives the privilege itself, I think that leads to an even narrower reading of these privileges. And a private right of action, again, not for compensable damages, just a declaratory judgment that the exceptions in these statutes apply to Dr. Davis. And whether or not other people have tried to sue as affirmative causes of action for liability against hospitals or other third parties, that's not what's at issue with this case. But if Dr. Davis was of the opinion that he should have been hired, he was given all indications that he was on track to be hired, why wouldn't he have appealed the decision then and sought administrative review under the Act if he had learned that something went sideways? He could have done that in 2009. And isn't that what the exhaustion of remedies provision is all about? Well, Judge, if I may respond, I believe we have time. Go ahead. I think there were other avenues of employment or other opportunities Dr. Davis was pursuing at the time that if he was denied at Kiwani, rather than go through the long, arduous, and obviously expensive process of appeal, he may have chose to pursue them. But that's the choice he must make if he wishes to pursue it. It would have been a cost-benefit analysis that would have weighed in favor of him had he known that he had a very strong case for the appeal, rather than they just didn't like his credentials. Thank you. I'd like to thank both counsel for their arguments here this morning. The matter will be taken under advisement and a written disposition will issue a due course. We are returning to the next case. Thank you.